**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 21 B 13626 |
| | ) | |
| JULIA BOWENS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

These matters come before the court on three motions filed by Julia Bowens ("Bowens" or "Debtor"): (1) a motion for sanctions and contempt of court for violation of the discharge injunction ("Discharge Motion"); (2) a motion for sanctions for violation of the automatic stay ("Stay Violation Motion"); and (3) a renewed motion to avoid fixing of lien as an impairment of the Debtor's homestead exemption pursuant to 11 U.S.C. § 522(f) ("Motion to Avoid Lien"). Having reviewed the papers submitted and heard the arguments of the parties, the court will deny all three motions.

### I.      JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), (K) and (O). Venue is proper under 28 U.S.C. § 1409(a).

### II.      BACKGROUND[1]

Fifth Third Bank ("Fifth Third") obtained a judgment against Bowens on September 22, 2014 (the "2014 Judgment").  Fifth Third recorded the 2014 Judgment and assigned it to a third party, which then assigned it to Semper Fidelis, LLC ("Semper Fidelis").  Semper Fidelis filed a complaint to foreclose its judicial lien ("Foreclosure Action") on Bowens's real property at 5845

---

[1] Some of the Background information is recited in the Order Denying Motion to Annul the Stay, or, in the Alternative, Obtain Relief from the Stay, EOD 46 (March 28, 2022) ("Annul Stay Order").

W. Midway Park, Chicago, Illinois (the "Midway Park Property").  The Circuit Court of Cook County entered a judgment of foreclosure on April 19, 2021.  After discovering that it had not named Bowens as a defendant in the Foreclosure Action, Semper Fidelis asked the state court to vacate the judgment of foreclosure, which the court did on August 16, 2021.

Meanwhile, on July 26, 2021, Bowens executed and delivered to Chicago Title Land Trust Company ("Chicago Title") a warranty deed naming Chicago Title as grantee of the Midway Park Property.  Chicago Title accepted the deed.

On September 10, 2021, Semper Fidelis filed an amended complaint for foreclosure and other relief.  In this amended complaint, Semper Fidelis sought to avoid the transfer to Chicago Title as a fraudulent transfer pursuant to 740 ILCS § 160/5(a)(1).  Around the same time, Semper Fidelis filed a petition to revive the 2014 Judgment.

On November 30, 2021, Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code.

About two weeks later, on December 15, 2021, the Circuit Court of Cook County granted Semper Fidelis's petition and revived the 2014 Judgment.  Semper Fidelis recorded a notice of the revived judgment ("Revival Notice") on both December 27 and December 30, 2021.  In its response to the Discharge Motion, Semper Fidelis concedes that "filing the Revival Notice may have been a tactical mistake because it was not necessary to preserve Semper Fi's right to foreclose the Judgment Lien[.]" (Response to Discharge Motion, p. 5.)

Semper Fidelis and Debtor engaged in motion practice in Debtor's bankruptcy case during 2021 and 2022, including a motion to avoid lien, but eventually resolved their differences.  On May 18, 2022, Chicago Title executed a deed transferring title to the Midway Park Property back to the Debtor.  Semper Fidelis prepared a Notice of Rescission of Recording of Notices of

Court Order ("Rescission Notice"), which it recorded with the Cook County Clerk on June 14, 2022. This action mooted Debtor's motion to avoid lien, and she withdrew it.

On August 30, 2022, the court entered an order of discharge, and closed Debtor's bankruptcy case a few days later.

Debtor then asked Semper Fidelis to dismiss the Foreclosure Action. It did not, so Debtor filed her own motion to dismiss the Foreclosure Action on November 14, 2022. Semper Fidelis opposed dismissal, filing a response in the Circuit Court of Cook County.

On February 1, 2023, Debtor presented a motion to reopen her bankruptcy case, which the court granted. She then filed the Discharge Motion, the Stay Violation Motion and the Motion to Avoid Lien. The parties presented their arguments, and the court ordered responses and replies to be filed. After reviewing the papers, the court ordered supplemental briefing, and then took the matters under advisement.

### III.    ARGUMENTS OF THE PARTIES

#### A. Motion to Avoid Lien

Debtor seeks to avoid the judicial lien held by Semper Fidelis that encumbers the Midway Park Property.[2] Debtor argues that Semper Fidelis's lien impairs her homestead exemption and is therefore avoidable under 11 U.S.C. § 522(f). The Midway Park Property is also encumbered by a tax lien of the Internal Revenue Service ("Service") in the amount of $400,000, plus interest in the amount of approximately $348,000, dating from 2018. Debtor is not seeking to avoid the Service's lien.

In response, Semper Fidelis asserts that the Debtor had no legal or equitable interest in the Midway Park Property on the date she filed for relief under the Bankruptcy Code. The basis

---

[2] Although Semper Fidelis filed the Rescission Notice in state court, it asserts that it still has valid lien rights in the Midway Park Property which permit it to continue the Foreclosure Action.

for this assertion is Debtor's execution and delivery to Chicago Title of the warranty deed naming Chicago Title as grantee of the Midway Park Property.  Semper Fidelis contends that, although Chicago Title did not record the deed, delivery of the deed conveyed title to it.  If Debtor did not have an interest in the Midway Park Property that could become property of the estate at the time of filing, Semper Fidelis could not have a lien "on an interest of the debtor in property."   As a result, Debtor cannot use the provisions of § 522(f) to avoid Semper Fidelis's lien.

Semper Fidelis also argues that if the court concludes Debtor did own the Midway Park Property on the petition date, its lien should not be avoided in its entirety.  Since its *in rem* rights would date back to the original recordation of the lien in 2014, its lien would be senior to the Service's, and there would be equity in the Midway Park Property to which its lien could attach.

In reply, Debtor contends that Semper Fidelis's lien expired in July 2021, seven years after the original judgment was entered, and is no longer enforceable.  Illinois law requires strict compliance with the procedures relating to the revival of judgments in order to preserve a creditor's lien rights.  Debtor urges the court to reject Semper Fidelis's position that a creditor can preserve the enforceability of a lien by filing a foreclosure complaint prior to the expiration of its judgment.

After briefing was complete, the court asked the parties to address two questions.  First, when a party revives a judgment, does the lien relate back to the original judgment date, or is it considered to be a new lien?  Second, if there is equity in the Midway Park Property after the exemption amount, would Semper Fidelis's entire lien be avoided, or would it be avoided only in part?

The parties filed simultaneous briefs addressing these questions.  Relying on the plain language of § 522(f), Debtor asserted that the total judicial lien would be avoided.  As for the post-revival lien, it does not relate back to the original date of the judgment.

Semper Fidelis took the opposite view on both questions.  Only the portion of a judicial lien that impairs the exemption is avoided under § 522(f).  As for the revived judgment, the lien *can* relate back to the original judgment.  Semper Fidelis argues that this may occur even if the original judgment went dormant, so long as the creditor filed an action to foreclose its lien before dormancy.  If Semper Fidelis had not filed suit before the judgment expired, and its lien lapsed, revival of the judgment with a new filing would have created a new judgment lien.

**B.  Discharge Motion**

In the Discharge Motion, Debtor seeks monetary sanctions and a finding of contempt against Semper Fidelis, its principal ("Rosenzweig") and its attorney ("Czaja") for violation of the discharge injunction in 11 U.S.C. § 524.  She asserts that Semper Fidelis's opposition to her motion to dismiss the Foreclosure Action "is a clear violation of the discharge injunction of Section 524(a) of the Bankruptcy Code."  (Discharge Motion, ¶ 20.)

In response, Semper Fidelis argues that it is pursuing only its *in rem* rights against the Midway Park Property.  It is not seeking to impose any *in personam* liability on the Debtor, and therefore its actions do not violate the discharge injunction.

The parties dispute whether the expiration of Semper Fidelis's judgment lien in 2021 precludes it from taking to conclusion a foreclosure suit filed before the lien expired.  One district of the Illinois Appellate Court found that a creditor may continue with such a suit.  *See Schindler v. Watson*, 2017 Il App (2d) 160126, ¶ 34.  Another Illinois Appellate Court decision held the opposite.  *See Barth v. Kantowski*, 948 N.E. 2d 276 (Ill. App. Ct. 2011).

Semper Fidelis asserts that the question of whether it has the right to pursue the Foreclosure Action should be decided in Illinois state court.  It seeks an opportunity to have the state court rule on Debtor's motion to dismiss the Foreclosure Action and to decide that question. In order for that to occur, this court must find that it is not appropriate to make a finding of contempt and impose sanctions against Semper Fidelis, Rosenzweig and Czaja for their continued litigation of the Foreclosure Action.

### C. Stay Violation Motion

In the Stay Violation Motion, Debtor seeks sanctions against Semper Fidelis on the grounds that recording the Revival Notice violated the automatic stay.  Semper Fidelis asserts that the Debtor did not own the Midway Park Property on the date she filed for relief under the Bankruptcy Code.  Therefore, when Semper Fidelis recorded the Revival Notice, neither the Debtor nor her bankruptcy estate had an interest in the Midway Park Property.  Consequently, Semper Fidelis did not take an action against either property of the estate or property of the Debtor, and could not have violated the stay.

### IV.    LEGAL DISCUSSION

### A. Motion to Avoid Lien

If a judicial lien attaches to property that a debtor may exempt from her bankruptcy estate, the Bankruptcy Code allows that debtor to avoid the lien through the operation of § 522(f).

> (f)(1)   Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
>
>> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)[.]

11 U.S.C. § 522(f).  *See In re Jaffe*, 932 F.3d 602, 605 (7th Cir. 2019).  The purpose of § 522(f) is to protect a bankruptcy debtor's exempt property and to enhance the debtor's fresh start.  *See In re Levinson*, 372 B.R. 582, 586 (Bankr. E.D.N.Y. 2007), *appeal denied, judgment aff'd sub nom. Levinson v. R & E Prop. Corp.*, 395 B.R. 554 (E.D.N.Y. 2008) (citing S. Rep. No. 95–989, at 76 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5862; H.R. Rep. No. 95–595, at 126–127 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6087–6088).

A debtor must satisfy four requirements to avoid a judicial lien under § 522(f)(1)(A):

-- the lien the debtor seeks to avoid is a judicial lien;

-- the debtor claims an exemption to which it is entitled under § 522(b);

-- the creditor's lien impairs the debtor's exemption; and

-- the debtor has an interest in the property.

*In re Moreno*, 352 B.R. 455, 458-60 (Bankr. N.D. Ill. 2006).  The Debtor has the burden of proving each element of § 522(f)(1), with one exception.  *See In re Flowers*, 572 B.R. 901, 903 (Bankr. N.D. Ill. 2017) ("The party moving to avoid the lien bears the burden of proof.").  The exception is that when a creditor objects "to a request under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien," the creditor has the burden of proving that the exemption is not properly claimed.   Fed. R. Bankr. P. 4003(c) and (d).

In this case, the elements at issue are whether Debtor had an interest in the Midway Park Property on the filing date and whether she was entitled to claim an exemption in it.

1. **The Midway Park Property was not property of the estate on the petition date, therefore Debtor was not entitled to claim an exemption in it**

   a. **Debtor transferred the Midway Park Property to Chicago Title**

On July 26, 2021, prior to filing for relief under the Bankruptcy Code, Debtor executed and delivered a warranty deed to Chicago Title, naming it as the grantee.  Chicago Title accepted

7

the deed.  Four months later, Debtor filed her chapter 7 petition.  Debtor has asserted that

because she directed that the deed not be recorded, she continued to own the Midway Park

Property and in fact did own it on the petition date.  In her reply in support of the Motion to

Avoid Lien, Debtor contends that her interest in the Midway Park Property on the petition date is

irrelevant.

Illinois law is clear that deeds are effective upon delivery, whether or not recorded.

"Recording is merely to put the public on notice that the property *has been transferred*, it is

irrelevant as to the parties to the transaction." *Jafri v. Jafri*, 2016 IL App (1st) 143721-U, ¶ 16

(unpublished order). *See In re Heaver*, 473 B.R. 734, 738 (Bankr. N.D. Ill. 2012), *aff'd sub nom.*

*Branch Banking & Tr. Co. v. Olsen*, No. 14 C 50027, 2014 WL 2154906 (N.D. Ill. May 22,

2014) ("While an unrecorded deed may be effective to transfer property as between the parties, it

must be recorded to be enforceable against third parties.").

The Illinois Supreme Court wrote in 1998:

> A warranty deed conveys a fee simple estate to the grantee. *The grantee's failure*
> *to record the deed does not affect the deed's operation as a conveyance.*  The
> deed is effective upon delivery. It is axiomatic that the grantor of a valid warranty
> deed cannot defeat the grantee's title to the property based on the grantee's failure
> to record. The grantee's failure to record the deed may affect the grantee's rights
> *vis-a-vis* a third party who purchases the property without notice of the grantee's
> unrecorded interest (see 765 ILCS 5/30 (West 1996)), but the grantee's failure to
> record does not resuscitate the grantor's interest in the property.

*In re Cook Cnty. Treasurer*, 185 Ill. 2d 428, 433, 706 N.E.2d 465, 468 (1998) (emphasis added)

(citations omitted).  *See also City of Virginia v. Mitchell*, 2013 IL App (4th) 120629, ¶ 27 ("a

deed need not even be acknowledged … in order for it to pass title").

> As between the parties thereto, a validly executed deed is binding and irrevocable
> immediately upon "delivery" (*Chicago Land Clearance Comm'n v. Yablong*, 20
> Ill.2d 204, 206, 170 N.E.2d 145, 146 (1960)), and a deed need not be recorded to
> be delivered (*Williamson v. Williamson*, 306 Ill. 533, 540, 138 N.E. 166, 169
> (1923)).

*Farmers State Bank v. Neese*, 281 Ill. App. 3d 98, 105, 665 N.E.2d 534, 538 (Ill. App. Ct. 1996).

Between Debtor and Chicago Title, the delivery of the deed was sufficient to effect a transfer.  Failure to record the deed does not affect this conclusion.

> **b.  Since she transferred the Midway Park Property to Chicago Title prior to filing her bankruptcy petition, Debtor cannot claim an exemption in the property**

Debtor transferred the Midway Park Property to Chicago Title on July 26, 2021, four months prior to filing for relief under the Bankruptcy Code.  She did not own the Midway Park Property on the petition date.  Since Debtor did not have an interest in it on the date she filed for relief under the Bankruptcy Code, the Midway Park Property did not become property of the estate.  11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case").

Because the Midway Park Property did not become property of the estate on the filing date, Debtor cannot claim an exemption in it.  *See Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991) ("Under the Code, however, the question is whether the lien impairs an 'exemption to which the debtor would have been entitled under subsection (b),' and under subsection (b), exempt property is determined 'on the date of the filing of the petition,' not when the lien fixed. 11 U.S.C. §§ 522(f), (b)(2)(A). We follow the language of the Code."); *Matter of Burciaga*, 944 F.3d 681, 684 (7th Cir. 2019) ("What is exempt, and what is not, depends on the state of affairs when bankruptcy begins.").

> **2.  Lien avoidance rights are also determined as of the petition date, therefore Debtor cannot avoid Semper Fidelis's lien**

If Debtor is not entitled to claim an exemption in the Midway Park Property, then she cannot assert that Semper Fidelis's lien impairs an exemption.

"A debtor's § 522(f) lien avoidance rights are also determined as of the petition date. Because lien avoidance is part and parcel of the exemption scheme, the right to avoid a judicial

9

lien must also be determined as of the petition date." *In re Goswami*, 304 B.R. 386, 392 (B.A.P. 9th Cir. 2003) (quotation omitted).  *See also In re Elliott*, 969 F.3d 1006, 1011 (9th Cir. 2020) (quotation omitted) ("To avoid a lien under section 522(f), the lien in question must impair an exemption as of the bankruptcy petition date.").

On the date she filed for relief under the Bankruptcy Code, Debtor did not have an interest in the Midway Park Property.  Therefore, it did not become property of the estate.  Since it did not become property of the estate on the petition date, Debtor could not claim a homestead exemption in it.  Since there is no homestead exemption to which she is entitled, Debtor cannot avoid Semper Fidelis's lien on the grounds that it impairs her exemption.

3. **The exception in § 522(g) that allows debtors to exempt recovered property that becomes property of the estate does not apply**

Sometimes property comes into the bankruptcy estate after the commencement of the case.  *See* 11 U.S.C. § 541(a)(3) (property of the estate includes "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title").  If Debtor's case trustee had filed a proceeding to avoid the transfer of the Midway Park Property, perhaps as a fraudulent conveyance, and had successfully recovered the property under 11 U.S.C. § 550, then it would have become property of the estate.

The Code provides that debtors may exempt property that a trustee recovers under § 550, "to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred[.]"  11 U.S.C. § 522(g).  Therefore, if Debtor's trustee had recovered the Midway Park Property, she might have claimed a homestead exemption in it.

Even if the court found Chicago Title's reconveyance of the Midway Park Property to be constructively a recovery under § 550, an objection to a claim of a homestead exemption in that

10

"recovered" property would likely have been sustained.  Section 522(g) does not allow debtors to exempt *all* property recovered under § 550.  If the asset in question is real property, then only property that was *not voluntarily transferred by the debtor* falls within the ambit of § 522(g). *See* § 522(g)(1)(A).  All of the allegations in the various matters before the court suggest that Debtor's transfer of the Midway Park Property to Chicago Title was, in fact, a voluntary transfer.

For the reasons stated above, the court will deny the Motion to Avoid Lien.

## B.  Discharge Motion

### 1.  Standard for holding a party in contempt for violation of the discharge injunction

This court entered Debtor's discharge under 11 U.S.C. § 727 on August 30, 2022, discharging her from all debts that arose before the petition date.  A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"  11 U.S.C. § 524(a)(2).

"When a party violates a bankruptcy court's order by pursuing a discharged debt, the debtor can ask that the court hold that party in contempt."  *In re Sterling*, 933 F.3d 828, 832 (7th Cir. 2019).  The moving party bears the burden of proving contempt by clear and convincing evidence.  *Id.*  Courts may also award sanctions as compensation to the debtor when an entity violates the discharge injunction.  *See In re Taylor*, 793 F.3d 814, 819 (7th Cir. 2015).

To determine whether a party should be held in contempt, courts employ an objective standard as described by the Supreme Court:

> [A] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

11

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019).

### 2. The discharge injunction bars actions that enforce a debtor's personal liability

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action … to collect, recover or offset any such debt as a *personal liability* of the debtor[.]"  11 U.S.C. § 524(a)(2) (emphasis added).  The "discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).  *See In re Terrell*, 614 B.R. 300, 303 (Bankr. N.D. Ill. 2020) ("A creditor may exercise its *in rem* rights against property without implicating the protections of the discharge injunction.").  *See also In re Jester*, No. BAP EO-15-002, 2015 WL 6389290, at *5 (B.A.P. 10th Cir. Oct. 22, 2015), *aff'd,* 656 F. App'x 425 (10th Cir. 2016) ("Actions to collect against the debtor personally are enjoined. In contrast, *in rem* actions, which include actions to enforce a lien against encumbered property, are not prohibited by the discharge injunction.") (footnote omitted).

Semper Fidelis contends that it is not seeking to hold Debtor personally liable in the Foreclosure Action.  Instead, it "was only seeking to enforce whatever *in rem* rights it still has against the [Midway Park] Property.  By filing its response to the Debtor's motion to dismiss the … Foreclosure [Action], Semper Fi[delis] had, and still had [sic], a reasonable belief it was pursuing its *in rem* rights against [the Midway Park] Property, which is not a violation of the discharge injunction[.]"  (Response to Discharge Motion, p. 10.)

The 2014 Judgment was first entered on September 22, 2014.  Earlier in this bankruptcy case, this court concluded that since Semper Fidelis did not record the memorandum of the order

of revival before September 23, 2021, the 2014 Judgment was not a lien against the Midway

Park Property as of that date. *See* Annul Stay Order, p. 4.

There is a split of authority in the Illinois state courts regarding a creditor's ability to

pursue a foreclosure action that it commenced before its lien expired. One district of the Illinois

Appellate Court found that a creditor may continue with such a suit. *See Schindler v. Watson*,

2017 Il App (2d) 160126, ¶ 34 ("So long as the judgment creditor files a foreclosure action

before the end of the seventh year of the judgment's enforceability, he preserves his lien against

the subject property *regardless of who holds title*."). Another Illinois Appellate Court decision

held the opposite. *See Barth v. Kantowski*, 948 N.E.2d 276, 280 (Ill. App. Ct. 2011) ("We

therefore conclude that since the plaintiffs allowed the judgment lien against the subject property

to lapse and did not revive the judgment and make the requisite filing while the judgment debtor

owned the property, the plaintiffs' lien cannot be asserted against the Kantowskis and the subject

property.").

Therefore, in its opposition to Debtor's motion to dismiss the Foreclosure Action, Semper

Fidelis is relying on authority that an Illinois court might find persuasive.

With that in mind, this court must conclude that there is an "objectively reasonable basis

for concluding that [Semper Fidelis's] conduct might be lawful." *Taggart*, 139 S.Ct. at 1799. If

there is an objectively reasonable basis for concluding that Semper Fidelis's conduct might be

lawful, there are no grounds to find it in contempt or to impose sanctions.

> Although they ultimately lost the issue on appeal, in general, losing on an issue in
> court does not render the losing party's position "objectively unreasonable." *See
> Maxwood Music Ltd. v. Malakian*, 722 F. Supp. 2d 437, 439 (S.D.N.Y. 2010); *see
> also Kirtsaeng v. John Wiley & Sons, Inc.*, ⸺ U.S. ⸺, 136 S. Ct. 1979, 1988,
> 195 L.Ed.2d 368 (2016) ("Courts every day see reasonable defenses that
> ultimately fail (just as they see reasonable claims that come to nothing.)"). The
> very things Debtors identify to show "objective unreasonableness" are what UW-
> Stout argues support its position. Both parties rely on the same evidence to

13

support their position. What Debtors suggest is evidence of "objective unreasonableness" appears to be a matter of reasonable minds coming to different conclusions.

*In re Hazelton*, 622 B.R. 354, 363 (Bankr. W.D. Wis. 2020) (footnote omitted) (finding that creditor UW-Stout violated the discharge injunction, but had an objectively reasonable basis for acting as it did, therefore sanctions were not appropriate).

Since the court finds no basis to hold Semper Fidelis in contempt or to award sanctions, it need not address the additional requests in the Discharge Motion's prayer for relief: (1) sanctioning Czaja and Rosenzweig personally; (2) finding Czaja and Rosenzweig in contempt; (3) finding Czaja and Rosenzweig in criminal contempt; or (4) entering an injunction against Czaja, Rosenzweig and Semper Fidelis.

For the reasons stated above, the court will deny the Discharge Motion.

## C. Stay Violation Motion

The automatic stay provides broad protection to bankruptcy debtors and their estates, and is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (quotation omitted).  Debtor contends that Semper Fidelis violated two subsections of § 362(a) when it filed the Revival Notice:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--…
>
> > (4) any act to create, perfect, or enforce any lien against property of the estate;
> >
> > (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]

14

While the protection of the automatic stay is broad, it is not limitless. *See In re Chellino,* No. 18BK25452, 2022 WL 1180621, at *5 (Bankr. N.D. Ill. Apr. 13, 2022) ("the automatic stay is not without limits or exceptions").  As discussed *infra* in section IV(A)(1), the Debtor had no legal or equitable interest in the Midway Park Property on the date she filed for relief under the Bankruptcy Code.  She had no interest in the Midway Park Property until Chicago Title reconveyed it to her in May 2022.

Therefore, Semper Fidelis's filing of the Revival Notice five months before Chicago Title reconveyed the Midway Park Property to Debtor was not an "act to create, perfect, or enforce any lien against property of the estate."  It could not be, since at the time it filed the Revival Notice, the Midway Park Property was not property of the estate.  Neither was Semper Fidelis's filing an "act to create, perfect, or enforce against property of the debtor any lien[.]"  At the time, the Midway Park Property was not property of the Debtor.

For the reasons stated above, the court will deny the Stay Violation Motion.

## V.    CONCLUSION

Having reviewed the papers submitted and the applicable case law, the court will deny each of the Debtor's motions for the reasons stated above.  An order will be entered consistent with this Memorandum Opinion, denying the Motion to Avoid Lien, the Discharge Motion and the Stay Violation Motion.

Date:   February 5, 2024

_____
DAVID D. CLEARY
United States Bankruptcy Judge

15